Good morning Mr. Young. May it please the court, my name is Wayne Young and I'm honored to be here this morning on behalf of Lumber One Home Center. It is appealing, here appealing today from the district court's decision to set aside a jury verdict in its favor on an issue that related to an overtime exemption under the Fair Labor Standards Act. Certainly a rare case when a jury verdict should be set aside and this case does not meet any of the criteria for such an instance. We believe that the that the district court's error in setting aside the jury verdict was multifold, generally in two broad categories. The first of which being his characterization of the evidence in leaving out material pieces of evidence we believe that that directly tended to prove the critical fourth element of the executive exemption, mischaracterizing other pieces of testimony and not reading the evidence in a way that supports the verdict as is required in the standard in Rule 50. He again used a lot of kind of picked apart and I use the term cherry-picked apart Mr. Morton's trial and again characterized it and read it in a way such as a fact finder might when trying to in a way that was not consistent with the verdict. In particular and specifically he in discussing the fourth element of the executive exemption, the court broadly states that plaintiffs Terry Madden and Rebecca O'Barr never made any suggestions as to hiring or firing or change of status of employees. And again in places such as in the appendix in pages 444 and 445 Mr. Morton talks about I consulted with Terry and other supervisors that were hired at the time. You know I got he uses the term input, he uses the term recommendation. When asked directly by plaintiffs counsel at trial did any plaintiffs make recommendations for hiring employees? Answer, yes ma'am. And so like I said again just to broadly state that I think broadly sweeps away all of the context of Mr. Morton's testimony and it could be that the reason for that is the judge has made an unspecified legal conclusion that whatever Mr. Morton testified to didn't meet the legal standard for a suggestion or recommendation under the fourth element of the executive exemption. And I'll talk that's the other broad category is to the extent that he made legal conclusions there's no citation for any authority for that number one but number two it was in error in light of the legal authority that we have found for appeal. What I read in all that testimony, I tried to read it all, it was so big and general and almost invariably covered anybody that was working and these people claim they were special and supervisors and I had a hard time finding any evidence that was direct or inference that they were treated any different than any other employee when it would come to hiring people and that was my problem and I wanted to state that to you so you could answer me if you can or answer me. I'll do my best. At least I looked at it. I'll do my best. I appreciate that and that's sort of the meat of the question here isn't it? Let me say this, this is a close case but that's why we have juries is for close cases and there were several instances and that's why I tried to outline what I thought were the best, the key parts of the testimony and block quotes throughout my brief but you also have to keep in mind what the district court doesn't address is sort of the rest of the context of the case. This store had just opened in a new location in a new town and the owner was not familiar with the town and as he put it somewhat eloquently so to speak I guess he hired the chiefs before he hired the Indians and so he hired the supervisors first and I think if we're going to characterize the testimony and draw inferences in favor of number one in a broad sense this is what I would say. Mr. Morton opened a new store in Mayflower, Arkansas. He hired his supervisors first and then after which when he began hiring rank and file employees he got suggestions and recommendations on hiring those rank and file employees and who to hire based on recommendations and input from his supervisors. So when Mr. Morton, again that's the context, when Mr. Morton says well we ask all our people or we ask everybody well everybody as he kind of kept saying over and over again you got to keep in mind the timeline everybody at that stage at that early infancy stage of the business were the supervisors he had hired. Okay now Mr. Stedman and the plants are going to say well doesn't that mean that there weren't any one there for them to supervise under element number three of the exemption okay and again it we were we were candid and forthright there was a period of time when there were only supervisors working at the store but the way the jury the instructions were submitted in the rock interrogatories were submitted it it wasn't broken down by any particular work week or any particular period of time and that was by agreement of the plaintiffs and the defendant and the court submitted it that way so it was their job taken as a whole from beginning to end and in doing so that the jury determined that they met all four criteria and we think that there was again it's a close question and I'm not saying that a fact finder would have been wrong had they can't went the other way but that's what juries are for there for close questions like this and Mr. Morton did use terms like look I rely he's like I remember specifically I consulted with Terry Madden with Terry Madden Rebecca Obar he couldn't recall a specific name but with the other plaintiff Doug Workman he had he remembered I remember Fred Dempsey I would not have hired him if Doug Workman had not vouched for him put his stamp of approval is the way he said it he said I wouldn't have hired him hadn't had mr. Workman plaintiff in this case not recommended him and again I don't know how that he could be given any more particular how his recommendation could not have been given any more particular weight absent him making the unilateral decision himself and so like I said it was you know he described that Rebecca Obar would have been involved in reviewing applications and participating in interviews again in the context of had the business evolved to where they were hiring more rank-and-file employees and again the district court's order and sort of summarily setting aside the jury verdict doesn't take into account that context in that detail which the standard requires that those inferences and a testimony be read in such a way as to uphold the verdict if at all reasonable does the record reflect how many rank-and-file employees were hired during the relevant mr. Morton estimated it at a time is between six and eight I believe and there were to break it down this mr. Dempsey and Anthony Dixon who the district court could not remember the name but mr. Dixon they were the sort of the dispatch they were the drivers that mr. Workman dispatched and supervised that would deliver commercial loads of lumber and things to contractors there was a gentleman named Tim Dicus and another Glenn Shirley were identified as sort of the yard hand top people that mr. Madden and open his own bar for separate periods of time supervised out in the lumberyard and would direct their work so I think it was you know prop you know I think he estimated between six and eight again but I would defer his testimony I do remember him estimating it in his in his your honor what's your response to the I think the district court said that if if if he consulted everyone then he couldn't have given particular weight to to the supervisors at issue here what's your response to that I think that miss construes what particular weight is and my first response is weighing one employees recommendation against another employees recommendation isn't in the defines particular way that's not a factor okay that wasn't a factor in the jury instruction that the jury had in deciding whether these recommendations were giving particular weight it's things such as how often they do it how often it's relied on is it part of their job duties and all those factors were discussed in mr. Morton's testimony he was asked is this part of their job duties he said yes to give these recommendations how the frequency of it he says we ask them every time you know with respect to hiring the few people that they did hire in as a for as far as authority the Rooney case from Massachusetts addresses this exact argument head-on and mr. Rooney was a lieutenant in a local town police department and he was saying look I ranked these applicants and I listened to their interviews but the patrolmen do that too and the court says Rooney argues that because patrolmen quote could just as easily practice the same hiring functions as he does he should not be regarded as an employee whose suggestions and recommendations ask the hiring and firing etc are given particular weight however the regulation does not state that Rooney must be the only officer in the department whose recommendations and suggestions are given particular weight in other words and this is just the way business is done a lot of times employers will rely on maybe a senior non-supervisor employee to give suggestions or recommendations about hiring or firing or things like that that doesn't compromise the exemption when similar recommendations are received from your exempt your exempt employees and so again in Rooney the evidence was so one-sided that the employer got summary judgment even on the issue where they had the burden of proof so again I'm not saying the facts are similar but on that narrow issue of well if you ask everybody and again I would keep in mind the context of everybody it's not everybody is in a sense of Walmart everybody it's this is a very small small business and everybody is as mr. Worben was describing it primarily constituted his supervisors that he had hired the other thing that that that the district court seized upon was is that where he used the term reference and again he did use the term reference and it was I think was up to the jury to construe how mr. Morton meant that term in the context of all his testimony he also used the term recommendation he also used the term input he also used the term consult and so to single out that term again I believe invades the province of the jury in that particular case well I think there's a key distinction though in Rooney as I understand what Rooney happened in Rooney he was a lieutenant and he actually sat on promotion boards ranked people and interviewed them made recommendations as to who is even going to get the interviews and and and the fact that he ranked him I think was was pretty critical in the district court's decision his argument was well that's true I did that in some cases but there are other cases where I didn't was not involved in hiring and other people were and therefore that takes me out is there anything to indicate here that your new employees did any ranking did anything other than what the rank-and-file employees did well again like I said I guess on Rooney what I would say is the way that you know he Rooney didn't make that argument but the way that the quote I just read is he's what he's saying is that the patrolman could just as easily practice the same hiring functions as he does so he said the patrolman could just as easily do all the exact same things I was doing but again it's like I said it's not even if the rank-and-file were doing everything and they were doing that doesn't mean that they weren't given particular way it's not a weighing between exempt and non-exempt the exempt non-exempt distinction is made considering the four criteria that are mean that I mean has to have that word must mean something exactly and again it's the way they give them some is it as long as they give them some weight well I think it means more weight than I mean again that's why the rate that's why there's a separate regulation in section 541.105 that defines here's the factors a fact finder should look at and determine whether or not particular weight is given and again weighing it versus the Congress of the department I guess in this case could just as easily have said look if non-exempt employees are asked in this exact same manner that tends to negate the whether it's given particular weight it doesn't say that because businesses often ask non-exempt non-supervisory folks for suggestions about things all the time that doesn't negate the exemption the exemption is considered on the four criteria the four elements taken as a whole and the jury was instructed on those the jury was properly instructed there on all of those elements and so again if it's I'm saying this is a close case and I got to just repeat that one more time that this that's why we have juries is for these close factual questions I'll again I'll reserve quickly a little bit of my time but on the on the attorneys fees issue I know that's a discretionary issue with the district court what I would say is is that our primary argument on that in our our issue with what the district court did in the calculation was as the district court noted the lodestar method is designed to start with a reasonable number of hours at a reasonable rate okay the petition didn't start with that and the district court recognized that the district court reduced the amount of hours to a reasonable number and then stopped and even recognized that that that that the results obtained should have been a factor under Hensley and I'll reserve quickly the remainder of my time thank you morning mr. Steadman morning your honors may I please the court my name is Tim Steadman and I represent Terry Madden Doug Workman and Rebecca bar who are the plaintiffs below judgment as a matter of law was appropriate here because lumber one did not present any evidence that establishes the their exit their burden of proof on the executive exemption the fourth element that these employees had the authority to hire a fire or that their suggestions or recommendations regarding tangible employment action were given particular weight also the discretion in awarding the amount of attorneys fees and cutting the fees by $53,000 on the exemption there's three points we don't believe it's accurate to say judge Holmes weighed the evidence or assess the credibility of witnesses he simply examined the record and found what limited evidence there was in the record there was no evidence that plaintiffs screened applicants that they participated in interviews that they ranked applicants that they issued verbal or written discipline that they evaluated app they evaluated employees that were working for raises or possible termination or that they were consulted about terminations well Morton did testify that he he solicited and and paid attention to their recommendations on hiring didn't he he testified that what was his general practice was to ask everyone about applicants because he was new to the area this was the store and he was opening a store in Mayflower where he was from Stuttgart and these individuals knew the folks on Terry Madden and Rebecca O'Barr he couldn't remember a single recommendation a single person that they had recommended and there's doesn't really doesn't that go to credibility his inability to you know he says generally I did and then he can't come up with specifics isn't that something that a jury should decide no this goes to really being an unfit favor the jury's excuse me the court is to give favorable inferences but unfavorable I'm sorry it's not supposed to resort to speculation and if he can't remember Terry Madden or Rebecca O'Barr even being consulted the jury would have to speculate to say yes they were he described this general practice and another point but but if he says I did in fact consult with him which I think he did although I can't with respect to one he could remember a couple of details with respect to the others he I don't think he was able to come up with details but isn't that enough that a jury ought to decide whether he's telling the truth or not no your honor and that also goes to the second point is that even if he consulted Terry Madden Rebecca O'Barr in terms of this general policy that he described as a legal matter that's not enough to satisfy the regulation because this the particular weight in these recommendations are a substitute for actual authority I would take some issue that employers widely consult non-exempt employees and every employee about personnel matters because that has implications in other area of the law such as title 7 that's why the actual authority to hire and fire is often confined to human resources and in the regulations amending this test and adding the fourth prong one of the main reasons that the the particular weight prong was added was to address the civil service sector where those employees as a matter of statute in a matter of law can't have the actual authority to hire fire but the function is delegated to them the human resources people the folks that are actually making the decisions have to listen to someone the boots on the ground that's what this particular weight prong addresses it's not the occasional offhand hey we're new to the area we're interviewing a bunch of people does anybody know these folks have you worked with them before you know if they're lazy I'm doing my due diligence to make sure we don't get a bad hire as opposed to actually having them participate in the interviews and having Rebecca or Terry or Doug say I think this person would be good for our business because X Y and Z I'm going to supervise them I think this is the kind of person I can supervise this is a general offhand due diligence asking for a reference which was his turn that's not the kind of criteria is a legal matter that satisfies the regulation moreover Morton repeatedly testified that there just weren't very many hires being made because of the bad economy as a legal matter they actually have to participate in these decisions it's not what he intended them to do or what he would have done if there had been more personnel decisions to be made it's what they actually did particularly when you're dealing with suggestions and recommendations about employment because there's no way to assess that and on the do you have any memory of Rebecca bar recommending any employee for hiring offhand today I can tell you no one ma'am I can tell you our general policy of how you did this this wasn't him recalling doing it and not remembering the name of the person he asked her about it was I can't even remember if she was consulted but my general policy is to ask everyone in the in the if the response to that is well everyone is a supervisor so he's only asking supervisors then the third exemption fails because there's no one for them to supervise if there's rank-and-file employees which is certainly the way I would read his testimony that we asked everyone and there were rank and there were very few rank-and-file employees I think six to eight total is what he testified to while he had five managers including his business manager and then himself so you had six supervisory employees managing six to eight rank-and-file employees let me because I think counsel made the argument that your sort of definition of particular weight meaning other employees isn't one of the four factors in the CFR in which the jury was instructed on what's your response to is non-exclusive factors for the to make a consideration about whether it's granted particular weight but the term particular still means something and we put it in our brief from Fowler's dictionary of usage particular is a strong adjective that indicates there's a reason why the noun to which it's attached is singled out and if this is the definition of particular weight just giving some weight then that term has no meaning the regulation would just say wait well your argument makes sense that it's relative to other employees but wouldn't also be conceivable that under these circumstances where this guy is sort of a foreigner to the local community that he might get particular weight to all the employees recommendations given that their locals we believe it's in the essence of the term particular that you can't give weight to everyone's recommendation if you give particular weight to everyone's opinion you're not really giving weight to anyone's unless no one has an opinion by asking everybody he's not singling out a particular supervisor one important part of the the authority to hire fire recommend and it's in the regulations is that this is the essence of what a bona fide executive employee does the quote from the nineteen forty sign report is it's difficult to imagine anybody in the hierarchy of management whether they're high or low whose job doesn't involve direct is directly concerned with hiring or firing employees either as a direct matter or through recommendations and if these recommend if he's asking everyone he's not asking Terry Madden I'm hiring someone for the lumberyard what do you think of this applicant he's asking everyone supervisors and non-supervisors I have this trucker Fred Dempsey who I'm thinking about hiring have y'all worked with them before do you know anything about it moreover even discussing because the bad economy Mr. Morton repeatedly testified that there just weren't employment decisions to be made again as a legal matter that cuts against the finding that these folks were exempt employees because there have to be people for them to supervise and there have to be examples of them giving recommendations as the tangible employment actions but also even when he discussed in the hypothetical he was unable to describe anyway in which these employees would be involved in tangible employment actions such as hiring and firing he just said they would be involved that's the kind is it possible in this case that we can't lump all three together in other words it seems to me that there may be enough here at least arguably that Wartman could go to the jury because he did say he specifically consulted Wartman if he hadn't if he hadn't given Dempsey a seal of approval I think the he wouldn't have hired whereas as you say with OBAR he couldn't even remember even talking to her about any employees but he says I must have because I consulted everybody I mean maybe maybe they're not all three similarly situated I the similarly situated term because that has such implications in labor employment I'm not sure I'd agree with you there but yes the testimony is different to all three legally we don't think there's enough for Doug Wartman who that there is a little bit of testimony there but with Terry Madden and Rebecca OBAR he specifically testified that he did not remember ever asking them and he described this general policy going back to Doug Wartman he tied this into the general policy his initial testimony was Fred I'm sorry Doug may have recommended Fred Dempsey and maybe one other employee who's Anthony Dixon that was his testimony and then he turns and talks about it in terms of his general policy of I was new to the area I didn't know anyone so I'm asking everyone for their recommendation that's that's where I think they're all lumped together is even if you assume these recommendations were made which he didn't introduce any evidence on Terry or Rebecca this still doesn't chin the bar of recommendations that are given particular way that set that substitute for actual authority to hire fire moving to the attorneys be issued briefly there's not a whole lot to say about the attorneys fees we petitioned for a hundred and three thousand which did not include a motion for summary judgment did not include the motion for collective action which were both denied and we asked for leave to file fee petition for fees on fees which was denied that didn't include everything the judge looked at it and cut the fees by fifty three thousand dollars more than half when doing so he said that he considered all of the Hensley factors including the success on the merits the amount involved all of the Hensley factors that satisfies the test he looked at it we cut too deeply but he the district court has broad discretion how to make these judgments what number one is arguing for is a is essentially a double reduction the court in determining the amount of reasonable attorneys fees consider the success on the merits and the amount involved and came up with a number one argues that the district court needs to do that and then on top of that they need to make an additional reduction because the lack of success on the merits because the amount of damages were lower but proportionality is not required and that's the Simpson versus merchant planners case there the district court had imposed a 20% reduction it looks like it was done at the initial stage just all in one court said that didn't abuse its discretion that can be contrasted with the Quigley case where the court found that it the district court did abuse its discretion because the district court didn't even calculate a load start district court and I can't remember the name of the method the district court employed but essentially the district court held that it was a two-bit crime and it deserved a two-bit punishment that was the methodology for attorney's fees while that methodology employing that methodology is an abuse of discretion where here judge Holmes went through each of the factors considered the arguments and said this is the amount of the attorney's fees that's perfectly reasonable and that's well within the judge's discretion in closing we would ask the court to affirm the jury I'm sorry affirm the judgment as a matter of law has to all three of the plaintiffs and affirm the award of attorney's fees and unless there's any more questions I'll sit down very good thank you mr. young you were about out of time but I think we'll give you two minutes to I'll use my last 30 seconds to address judge Malloy's question which I think appreciate that thank you your honor use remainder of my time to address judge Malloy's question to me which I think cuts at the heart of the matter first of all agreed that the fact that the facts are somewhat unique is to all three disagree with mr. Stedman he specifically mr. Morton in testimony did specifically say I do remember I consulted with Terry Madden and Rebecca bar was where he was perhaps not as not as specific in his memory again an issue the jury could have credited either against him or for him judge Malloy's question you know what this particular mean if you can ask everybody I think it's key to remember that the term particular modifies weight not recommendations so in other words is that it's not you're not asking for particular recommendations from only your supervisors it means do whatever recommendations and suggestions that you get from these folks that you're classifying as exempt are you giving those recommendations some particular weight Rooney says you might give particular weight to suggestions and recommendations from other folks not exempt exempt whatever the case may be but it's the weight that you give the suggestion not necessarily that you're only asking for suggestions from your exempt employees and I think that is the the heart of the matter and like I said that the key criteria and again I would say is there any evidence that these people were their recommendations were given more weight than other he said that you know he testified that he you first of all I think that would be an issue of a subjective factual determination for the jury to make based on what he was saying how he was describing their involvement but he did state that when I asked him because I know this is an element I said you know what did you do that with that information he's like oh we use it it was good information I relied on it I was hiring blind so in this civil service example he was sort of just you know he wasn't boots on the ground these guys were the boots on the ground and he was relying on the recommendations and he said he was and and so again I appreciate the court's allowance of extra time and thank you for your your honor I'm not related to the youngs in Texarkana but but those are good folks and the judge young is a magistrate in in out of tech he's from Texarkana and I believe he's still a magistrate in the Eastern District but but no no really no relation that I know of your honor I know your firm and I in years ago thank you your yes very good counsel we appreciate your arguments case will be submitted and decided in due course and we're gonna take a brief recess now